**EGGENBERGER v. ERIE R. CO.**
**Civ. A. No. 4733.**

United States District Court
Middle D. Pennsylvania.

Aug. 4, 1954.

I. Reines Skier, Hawley, Pa., for plaintiff.

Edward W. Warren, Walter L. Hill, Jr., Joseph C. Kreder, Scranton, Pa., for defendant.

WATSON, Chief Judge.

The plaintiff, Edward Eggenberger, instituted this action to recover damages sustained as the result of an accident, which, it is alleged, was caused by the negligence of the Erie Railroad Company and its servants, agents, and employees. On May 5, 1952, plaintiff's automobile and defendant's train were involved in a grade crossing collision near the Village of Rowland, Pike County, Pennsylvania.

The plaintiff contends that the collision was caused by the negligence of the defendant in the following particulars:

(a) Driving and operating the locomotive and train of cars over the grade crossing at a high and dangerous rate of speed;

(b) Failing to check and reduce the rate of speed of the locomotive and train of cars as it approached the grade crossing, in time to avoid the collision;

(c) Failing to erect gates or electric signals, or to station a flagman at the grade crossing to warn travelers using the public highway of the approach of the locomotive and train of cars;

(d) Failing to give plaintiff any proper, adequate, timely or sufficient warning of the approach of the locomotive and train of cars, by the ringing of a bell, blowing of a whistle or otherwise;

(e) Operating the locomotive and train of cars attached thereto at a reckless and dangerous rate of speed at a place where sufficient care should have been exercised by the defendant;

(f) That at the time of the accident and for a long time prior thereto, the situation and surroundings of the defendant's railroad tracks, maintained by it, and under its control and operation at the crossing, on the easterly side thereof, were so as to obstruct the view of approaching trains on the east; and that by reason of obstructions caused by trees and vegetation located immediately adjacent and adjoining the said tracks so being used, maintained and operated by the defendant at the crossing, the view to the east was almost completely obstructed, so that travelers proceeding to cross the tracks in a northerly direction had practically no view to the east of approaching trains, until the right of way and tracks of the defendant were reached by such travelers;

(g) That the plaintiff did not see and could not have seen such approaching train in time to avoid the collision, although he looked and listened and exercised due care;

(h) Failing to regard the rights and safety of the plaintiff.

The action was tried before the Court without a jury.

On the basis of the legal evidence received at the trial the Court makes findings of fact and conclusions of law:

### Findings of Fact

1. The plaintiff is Edward Eggenberger, a citizen of Pennsylvania, who resides in Greeley, Pike County, Pennsylvania.

2. The defendant is the Erie Railroad Company, a New York corporation, which is engaged as a common carrier in the operation of a single track surface railroad running from Hawley, Wayne Coun-

ty, Pennsylvania, to its main line at Lackawaxen, Pike County, Pennsylvania.

3. Legislative Route No. 51015 is an improved dirt road running from Greeley, Pennsylvania, to Rowland, Pennsylvania, and crosses the single railroad track near the village of Rowland, Pennsylvania.

4. The village of Greeley is located south of the crossing and Rowland is located north of the crossing. The road runs generally in a north and south direction and the railroad track runs generally in an east and west direction.

5. On May 5, 1952, at about 7:20 A.M., E.D.S.T., plaintiff was operating a 1949 Ford Coupe automobile in a northerly direction and was struck at the crossing by a diesel engine and train of the defendant, which was travelling west.

6. The crossing is located in a rural area, there being only six houses within a radius of one-quarter mile of the crossing.

7. The traveled way of the dirt road approaching the crossing is approximately 13.5 feet wide with a berm on each side about three feet wide.

8. At a point 361 feet from the southerly rail of the track there is an advance warning sign of the railroad crossing.

9. The road proceeds on a downgrade from the advance warning sign, and contains several curves or a series of curves. The average downgrade is 5.29 feet in a hundred feet. At a point 21 feet south of the crossing the ground is three inches higher than it is at the crossing.

10. There is a cross buck railroad crossing sign located on the north side of the crossing, approximately 11 feet east from the center of the crossing. The crossing and cross buck sign can be seen from a point in the center of the road located 204 feet south of the south rail of the crossing.

11. In proceeding north along the road from the advance warning sign, there are trees and brush on the easterly side of the road. At the time of the accident the leaves on the trees were only partly out. The trees and brush continue to a point no more than 50 feet south of the crossing, which is approximately the beginning of defendant's right of way. The area 50 feet south of the track and running east of the road contains no trees or brush to obstruct a person's vision.

12. A person standing in the center of the highway at a point five feet south of the southerly rail of the crossing has an unobstructed view of approximately 560 feet eastwardly down the track; at 10 feet south of the southerly rail approximately 590 feet; at 15 feet approximately 686 feet; at 20 feet approximately 560 feet; at 25 feet approximately 749 feet; and at 50 feet approximately 796 feet.

13. Defendant's train consisted of a diesel locomotive, 17 freight cars, and a caboose.

14. At the time of the accident, the weather was clear and fair and the sun was shining.

15. The train was travelling at a speed of approximately 32 miles per hour as it passed the whistle post located about one-quarter mile east of the crossing and continued at approximately the same speed to the crossing.

16. At the whistle post the engineer sounded the horn, gave two more blasts between the whistle post and the crossing, and a fourth blast at the crossing itself.

17. At a point about 200 feet east of the crossing, the fireman, who was seated on the left or south side of the locomotive, observed plaintiff's automobile at a point about 200 feet south of the crossing and approaching the crossing.

18. Plaintiff's speed was approximately 32 miles per hour.

19. Plaintiff did not reduce the speed of his automobile nor did he stop, but continued on to the crossing and the train struck plaintiff's vehicle in the middle of the crossing.

20. There were no operating controls on the fireman's side of the train.

21. The engineer was seated on the right or north side of the engine and did

not see the plaintiff's car until just prior to the accident.

22. When the fireman observed that plaintiff was not going to stop at the crossing, he called out to the engineer and the engineer applied his brakes.

23. After the automobile was struck it came to rest on its roof about 50 to 125 feet west of the crossing on the northerly side of the track.

24. The engine of the train came to a stop about 886 feet from the westerly end of the crossing.

25. As a result of the accident, plaintiff's automobile was damaged and plaintiff suffered personal injuries.

26. The defendant's employees were not negligent in the operation of the train immediately prior to or at the time of the accident.

27. The accident was caused by plaintiff's failure to stop, look and listen before proceeding across the railroad track.

## Discussion

The plaintiff, in support of his claim, relies largely on the decision of Travis v. Pennsylvania Railroad Company, 377 Pa. 537, 105 A.2d 131, 133. The facts in the Travis case differ substantially from those in the present case. In the Travis case the driver of the automobile was killed in the accident and thus there was a legal presumption that he exercised due care. There also was no evidence as to what Travis did before entering the crossing. In the present case the plaintiff was not favored by the presumption, and, furthermore, there was evidence that the plaintiff never stopped at the crossing.

In the Travis case the Court in its opinion stated:

"Where a traveller stops, looks and listens before entering a grade crossing and, neither seeing nor hearing anything approaching on the tracks, proceeds and is thereafter struck by a train on a track beyond the first, the question of his contributory negligence is for the jury, and the incontrovertible physical facts rule has no application."

This principle of law has no application in the present case because there is evidence that the plaintiff did not stop and, furthermore, the rule refers to a situation where there is more than a single track railroad. In the present case only a single track railroad is involved.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of the action.

2. The accident and resultant injuries suffered by the plaintiff were not the result of any negligence on the part of the defendant, or its employees, agents, and servants.

3. The accident and resultant injuries suffered by the plaintiff were caused solely by the negligence of the plaintiff.

4. Judgment should be entered for the defendant.